UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JOHN POTENZA,

                        Plaintiff,

           - against -

JAMES P. MOLINARO, et al.,

                    Defendants.
----------------------------------------------------------X

**REPORT AND
RECOMMENDATION**

03 CV 5534 (CBA)

On October 31, 2003, plaintiff John Potenza filed this action, pursuant to 42 U.S.C. §

1983, against the City of New York (the "City") and various officials of the City[1] (collectively

the "City defendants"), Staten Island Community Television, Inc. ("SICTV") and various officers

and directors of SICTV[2] (collectively, the "SICTV defendants"), Staten Island Cable, LLC ("SI

Cable"), the Public Service Commission ("PSC") of the State of New York, and William Flynn,

Chairman of the PSC. In the Cause of Action at issue,[3] plaintiff alleges that his constitutional

rights were violated when he was denied access to SICTV facilities to produce programming for

a public access cable television station carried by defendant SI Cable.

By Notice of Motion dated November 15, 2004, the SICTV defendants moved to dismiss

plaintiff's Amended Complaint, arguing that: (1) plaintiff cannot maintain an action against the

---

    [1]The City officials named in the Complaint are Michael Bloomberg, sued in his official
capacity as Mayor of the City, and the Honorable James P. Molinaro, sued in his official capacity
as President of the Borough of Staten Island.

    [2]The SICTV defendants include Tibor Spiegel, Executive Director of SICTV, Mark
Jarrett, M.D., Chairman of the Board of Directors of SICTV, and Edward Salek, Director of
SICTV.

    [3]See *infra* notes 11-12 and accompanying text.

SICTV defendants under the First and Fourteenth Amendments because there was no state action here (SICTV Mem. at 7);[4] and (2) plaintiff does not allege that the denial of plaintiff's access to the facilities was content based. (SICTV Mem. at 10). The City defendants also filed a motion to dismiss the Complaint on November 17, 2004, asserting that there are no allegations in the Complaint that the City defendants were in any way responsible for plaintiff's injuries and there are no allegations that the City defendants participated in the revocation of plaintiff's privileges. (City Mem. at 2).[5]

By Order dated March 4, 2005, these motions were referred to the undersigned to prepare a Report and Recommendation.

## FACTUAL BACKGROUND[6]

The Amended Complaint (the "Complaint") alleges that on July 15, 1999, the PSC confirmed a Franchise Agreement between the City and SI Cable (the "Agreement"),[7] authorizing SI Cable to operate a cable television system in the Borough of Staten Island. (Compl. ¶¶ 14,

---

[4]Citations to "SICTV Mem." refer to the SICTV defendants' Memorandum of Law in Support of Defendants' Motion to Dismiss, dated November 15, 2004, and attached to the SICTV defendants' Notice of Motion, also dated November 15, 2004.

[5]Citations to "City Mem." refer to the City Defendants' Memorandum of Law in Support of their Motion to Dismiss, dated November 17, 2004.

[6]The facts as set forth herein are derived largely from the Amended Complaint ("Compl.") and any documents appended thereto, unless otherwise noted. For purposes of this motion, the allegations in the Amended Complaint are assumed to be true. (See discussion *infra* at 6-7).

[7]Although plaintiff has attached certain documents to the Complaint, the Agreement was not provided to the Court.

15). The terms of the Agreement require SI Cable to supply four public access television channels and public access television production facilities for use by the residents of Staten Island and qualified not-for-profit organizations. (Id. ¶ 16).

Under the Agreement, the Borough President is authorized to designate a Community Access Organization (the "CAO") which is responsible for administering the public access television channels and facilities provided by SI Cable for public use, and which receives funds from SI Cable through the collection of public access fees from SI Cable subscribers. (Id. ¶¶ 17, 25). Pursuant to this authority, SICTV was incorporated and designated by the Borough President as the CAO to oversee and administer the public access channels provided by SI Cable. (Id. ¶¶ 21-24). The Borough President, in accordance with the Agreement, also appointed the directors who serve on the SICTV Board of Directors ("Board"), including defendant Mark Jarrett, M.D., who was elected by the Board to serve as Chairman of the Board. (Id. ¶¶ 9, 27-29). Defendant Tibor Spiegel was hired by the Board to serve as the Executive Director of SICTV. (Id. ¶ 30).

SI Cable owns property located at 100 Cable Way, in Staten Island, where, pursuant to the terms of the Agreement, it provides television production facilities and offices to SICTV. (Id. ¶ 31). The Complaint alleges that defendant Spiegel promulgated certain policies and procedures governing the rights of Staten Island residents to use the SICTV facilities and channels, including policies and procedures governing the revocation or supervision of those access rights. (Id. ¶¶ 32-33).

Plaintiff alleges that he is an independent television producer who produces television programming for public access television. (Id. ¶ 18). Plaintiff alleges that he has previously

3

produced television programming in the studio facilities of SICTV, and that he relies on those

facilities to produce certain types of programming at a low cost, which he is unable to produce

without access to the SICTV studios. (Id. ¶¶ 19-20).

Plaintiff alleges that "[f]or reasons unknown,"[8] on or about January 28, 2002, defendant

Spiegel permanently revoked plaintiff's right to use the SICTV production facilities. (Pl's.

Mem.[9] at 2; see also Compl. ¶ 34). Plaintiff further alleges that his right to access was revoked

without an opportunity to be heard. (Id. ¶ 35).

In his First Cause of Action, brought pursuant to 42 U.S.C. § 1983, plaintiff alleges that

the actions and omissions of "defendants" "were undertaken under color of state law," and were

taken in violation of plaintiff's rights to freedom of speech, freedom of expression, due process

of law, and equal protection of the laws as secured by the First and Fourteenth Amendments to

---

[8]According to the SICTV defendants' Memorandum of Law, plaintiff was banned from the facilities "after being involved in a confrontation with SICTV employees." (SICTV Mem. at 6). Since the motion under consideration is a motion to dismiss, the Court's inquiry is limited to the sufficiency of the facts alleged in the Complaint, and therefore, defendants' claim as to the reason for the revocation of plaintiff's access rights may not be considered at this juncture. See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

[9]Plaintiff's Memorandum of Law, dated December 1, 2004 ("Pl's. Mem."), alleges that defendant Spiegel revoked plaintiff's "right to use the public access facilities and severely burdened his ability to cablecast programs on the public access channel by physically barring [plaintiff] from coming onto SICTV's premises . . ." (Pl's. Mem. at 2-3). Plaintiff further alleges that the SICTV Agreement, policies and procedures, and Mission Statement grant SICTV discretion to allocate channel time other than on a first-come, first-served, nondiscriminatory basis, and that as a result, plaintiff "does not always obtain the channel time he desires." (Compl. ¶¶ 52-54, 56). However, plaintiff's allegations regarding access to channel time appear only in plaintiff's Second Cause of Action, and are therefore not at issue before this Court. See infra notes 11-12 and accompanying text.

4

the Constitution.[10] (Compl. ¶¶ 45-49). The Second Cause of Action alleges that the provisions of the Agreement and SICTV's policies and procedures are inconsistent with the First Amendment and violate state cable regulations that require all channel time on public access channels to be allocated on a first-come, first-served basis. (Id. ¶¶ 51-57; but see infra note 12). Finally, in his Third Cause of Action, plaintiff alleges that he was wrongfully excluded from a meeting of the SICTV's Board of Directors, which plaintiff argues is a "public body" within the New York State Open Meetings Law. (Compl. ¶¶ 59-62). See N.Y. Pub. Off. Law § 6 (2001).

Plaintiff seeks a declaratory judgment that defendants violated his rights, that the Agreement, policies, procedures and mission of SICTV violate plaintiff's rights, and that the SICTV is subject to the Open Meetings Law. Plaintiff also seeks a permanent injunction barring defendants from refusing him access to the SICTV facilities and from asserting the provisions of the Agreement or SICTV's policies as a justification for denying plaintiff channel capacity on any basis other than first-come, first-served.

On March 4, 2005, the district court referred defendants' motions to dismiss to the undersigned. Although the City defendants have raised arguments seeking to dismiss the plaintiff's Second and Third Causes of Action (City Mem. at 2-3, 9-10), the memoranda of both plaintiff (Pl's. Mem. at 4 n.2, 19) and defendants (SICTV Mem. at 3) indicate that at a pre-motion conference, the district court limited the briefing to the First Cause of Action.[11] A minute

---

[10]Plaintiff has subsequently withdrawn his equal protection claim (Pl's. Mem. at 15 n.5, 19), and thus, this Court has not addressed that claim. Further, although plaintiff alleges that defendants' actions deprived him of "federal statutory rights to use channel capacity" (Compl. ¶ 48), he does not cite a particular statutory section that he claims was violated in this case.

[11]Plaintiff cites the date of this pre-motion status conference as September 28, 2004 (Pl's. Mem. at 4 n.2), and defendants cite the date as October 6, 2004. (SICTV Mem. at 3). There is

entry on the docket sheet, dated October 6, 2004, reflects that during a status conference on that date, the district court ordered the parties to "submit motions on the federal claims only."[12] (Minute Entry, dated October 6, 2004). Since plaintiff has not addressed the City defendants' arguments on the state law claims and none of the other defendants, including SI Cable and the State defendants, who are named only in the state law claims, have addressed these issues, this Court has addressed only the motions to dismiss the federal claims.

## DISCUSSION

### A. Motion to Dismiss

In reviewing a complaint for dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. See Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir.), cert. denied, 513 U.S. 836 (1994); see also Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993). "In determining the adequacy of a

no disagreement between plaintiff and SICTV defendants on the scope of briefing, however.

[12]While plaintiff's Overview of the Action states that "[t]his action . . . contains a cause of action for a declaratory judgment . . . that the cable franchise agreement . . . [is] inconsistent with the First Amendment" (Compl. ¶ 1(b)), this allegation does not actually appear at any other point in plaintiff's Complaint or in his Memorandum. (See Compl. ¶¶ 52-57 (stating plaintiff's Second Cause of Action but failing to allege any constitutional violation)). Only plaintiff's First Cause of Action states any constitutional violation; his Second Cause of Action alleges defendants' actions to be simply "contrary to state cable regulations" (Compl. ¶ 55), and his Third Cause of Action alleges only a violation of the "Open Meetings Law." N. Y. Pub. Off. L. § 6. (See Compl. ¶ 61). Indeed, plaintiff concedes in his Memorandum that this Court only has jurisdiction based upon plaintiff's First Cause of Action. (Pl.'s Mem. at 4 n.2). In light of the plaintiff's own statements in his Complaint and in his Memorandum, this Court construes the district court's Order to "submit motions on the federal claims only" as referring exclusively to plaintiff's First Cause of Action.

claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (citing Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991)); see also Leonard v. Israel Discount Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999). "Moreover, 'when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint,' the court may nevertheless take the document into consideration in deciding the defendant's motion to dismiss, without converting the proceeding to one for summary judgment." Int'l Audiotext Network, Inc. v. A.T. & T., Co., 62 F.3d 69, 71-72 (2d Cir. 1995) (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

The complaint may be dismissed only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. WestPoint-Pepperell, Inc., 945 F.2d at 44 (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see Boddie v. Schnieder, 105 F.3d 857, 860 (2d Cir. 1997) (holding that after construing plaintiffs' claims liberally, a court may grant dismissal "only if it is clear that the plaintiff would not be entitled to relief under any set of facts that could be proved consistent with the allegations"); Olkey v. Hyperion 1999 Term Trust, Inc., 98 F.3d 2, 5 (2d Cir. 1996), cert. denied, 520 U.S. 1264 (1997). Indeed, the Second Circuit has held that this "rule 'applies with particular force' in [a] case [where] plaintiffs seek to vindicate their civil rights." Sealed v. Sealed, 332 F.3d 51, 55 (2d Cir. 2003) (quoting Chance v. Armstrong, 143 F.3d 698, 701 (2d Cir. 1998)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to

offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Sherer, 468 U.S. 183 (1984)), cert. denied, 519 U.S. 808 (1996).

## B. Elements of a Section 1983 Action

In order to state a valid claim under Section 1983, the "plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir.1993) (citing cases); see 42 U.S.C. § 1983; Kalina v. Fletcher, 522 U.S. 118, 123 (1997); Gomez v. Toledo, 446 U.S. 635, 638 (1980); Imbler v. Pachtman, 424 U.S. 409, 417 (1976); Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970). Under the first prong of this test, a plaintiff alleging constitutional violations under Section 1983 is "required to show state action." Tancredi v. Metropolitan Life Ins. Co., 316 F.3d 308, 312 (2d Cir.) (citing Rendell-Baker v. Kohn, 457 U.S. 830, 838 (1982); United States v. Price, 383 U.S. 787, 794 n.7 (1966); United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292, 1295 (2d Cir. 1991)), cert. denied, 539 U.S. 942 (2003); see also Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 n.2 (2001) (noting that "[i]f a defendant's conduct satisfies the state-action requirement of the Fourteenth Amendment, the conduct also constitutes action 'under color of state law' for [Section] 1983 purposes") (quoting Lugar v. Edmonson Oil Co., 457 U.S. 922, 935 (1982)). "It is axiomatic that the First and Fourteenth Amendments, and [Section] 1983, apply only to state actors." Leeds v. Meltz, 85 F.3d 51, 54 (2d Cir. 1996).

8

Where the alleged violation arises as a result of private conduct, "[s]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. at 295 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)). The Second Circuit has held, in light of the Supreme Court's recent decision in Brentwood Academy, that "'there is no single test to identify state actions and state actors.'" Horvath v. Westport Library Ass'n, 362 F.3d 147, 151 (2d Cir. 2004) (quoting Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. at [294]). "Rather, there are 'a host of facts that can bear on the fairness of . . . an attribution' of a challenged action to the State." Id.; see also Tancredi v. Metropolitan Life Ins. Co., 316 F.3d at 313.

In addition to establishing state action, a plaintiff seeking to impose liability on a municipality under Section 1983 must show that there was a custom or policy of the municipality that caused the deprivation of plaintiff's constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978); DeCarlo v. Fry, 141 F. 3d 56, 61 (2d Cir. 1998). In the absence of a "direct causal link between a municipal policy or custom," City of Canton v. Harris, 489 U.S. 378, 385 (1989), a municipality may not be held liable under Section 1983 on the basis of respondeat superior alone. See Monell v. Dep't of Soc. Servs., 436 U.S. at 694-95; Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 122 (2d Cir. 1991).

Thus, to establish municipal liability against the City under Section 1983, plaintiff must demonstrate that the violation of his rights was caused by (1) the application of a formal policy or procedure adopted by the City, see Monell v. Dep't of Soc. Servs., 436 U.S. at 690-91;

9

(2) actions taken by a City official who is responsible for establishing final policy on the issue, see Walker v. City of New York, 974 F.2d 293, 296-97 (2d Cir. 1992), cert. denied, 507 U.S. 961 (1993); see also Pembaur v. City of Cincinnati, 475 U.S. 469, 483-84 (1986) (plurality opinion); (3) an unlawful practice of subordinate officials that was sufficiently widespread to be considered a "custom or usage" acquiesced in by policymaking officials, see Sorlucco v. New York City Police Dep't, 971 F.2d 864, 871 (2d Cir. 1992); see also City of St. Louis v. Praprotnik, 485 U.S. 112, 127, 130 (1988) (plurality op.); or (4) the failure to properly supervise and train municipal employees where the failure "amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." City of Canton v. Harris, 489 U.S. at 388; Walker v. City of New York, 974 F.2d at 297-98.

In seeking to dismiss plaintiff's First Cause of Action, the City and the SICTV defendants contend that plaintiff's Section 1983 claims, based on alleged violations of the First and Fourteenth Amendments, must be dismissed because plaintiff has failed to allege the necessary elements of these claims.

## C. Under Color of State Law

Both the City defendants and the SICTV defendants argue that plaintiff's Complaint fails to allege facts necessary to establish the first element of a Section 1983 claim - - namely, that defendants acted under color of state law. Defendants contend that because SICTV is not a state actor, plaintiff cannot maintain a cause of action for a deprivation of plaintiff's rights under the First and Fourteenth Amendments. Thus, the first issue is whether SICTV is a government entity such that it may be considered a state actor for purposes of Section 1983.

10

In determining whether "seemingly private behavior 'may be fairly treated as [state action],'" Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n, 531 U.S. at 295, courts traditionally utilized two general approaches: the "state-function" approach and the "symbiotic relationship" approach. See Jensen v. Farrell Lines, Inc., 625 F.2d 379, 384 (2d Cir. 1980), cert. denied, 450 U.S. 916 (1981); see also Hamlin v. City of Peekskill Bd. of Educ., 377 F. Supp. 2d 379, 385-86 (S.D.N.Y. 2005). The "state-function" approach, also known as the "public-function" approach, examined the conduct of the private actor to determine whether its conduct "is equivalent to the performing of a state function, or is traditionally associated with sovereignty. It is not enough if the private entity is merely affected with the public interest; it must exercise powers 'traditionally exclusively reserved to the State.'" Jensen v. Farrell Lines, Inc., 625 F.2d at 384 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. at 352).

Courts have also made it clear that "the relevant question [for the court] is not simply whether a private group is serving a 'public function,'" but rather "whether the function performed has been 'traditionally the exclusive prerogative of the State.'" Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982) (quoting Blum v. Yaretsky, 457 U.S. 991, 1011 (1982) and holding that education is not an "exclusive" public function); see also Jackson v. Metropolitan Edison Co., 419 U.S. at 350 n.7, 352-53 (holding that regulated utilities such as gas, power and telephone are not state functions since they are not "traditionally exclusively reserved to the State"); Horvath v. Westport Library Ass'n, 362 F.3d at 152 (holding that the provision of library services is not typically one performed exclusively by the government); Lloyd v. New York Botanical Garden, No. 03 CV 7557, 2004 WL 2093468, at *5 (S.D.N.Y. Sept. 17, 2004) (holding that the operation of a botanical garden and the provision of related educational services

11

are not exclusive public functions). On the other hand, examples of state action may be found where the State contracts with a private entity to perform activities that have traditionally been "the exclusive, or near exclusive, function of the State," such as the administration of prison facilities. Horvath v. Westport Library Ass'n, 362 F.3d at 151-152 (citing West v. Atkins, 487 U.S. 42, 54-57 (1988)).

Under the second approach, the "symbiotic relationship" approach, courts held that there must be "'a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" Jensen v. Farrell Lines, Inc., 625 F.2d at 385 (quoting Jackson v. Metropolitan Edison Co., 419 U.S. at 351); see also Lloyd v. New York Botanical Garden, 2004 WL 2093468, at *5 (discussing whether there is a "sufficiently close nexus with the state").

In its recent decision in Brentwood Academy v. Tennessee School Athletic Association, the Supreme Court made it clear that "there is no single test to identify state actions and state actors." 531 U.S. at 294. The Court emphasized the fact that determining whether there is state action "is a matter of normative judgment, and the criteria lack rigid simplicity. . . .[N]o one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government." Id. at 295-96 (citing cases). Eschewing any particular test, the Court in Brentwood Academy identified a "host of facts that can bear on the fairness of . . . an attribution [of state action]." Id. at 296. Private conduct may be state action: (1) "when it results from the State's exercise of 'coercive power;'" (2) "when the State provides 'significant encouragement, either overt or covert;'" (3) "when a private actor operates as a 'willful

12

participant in joint activity with the State or its agents;'" (4) "when [a private entity] is controlled by an 'agency of the State;'" (5) "when [a private entity] has been delegated a public function by the State;" (6) "when [a private entity] is 'entwined with governmental policies;'" or (7) "when government is 'entwined in [a private entity's] management or control.'" Id. (citing cases). Furthermore, the Court recognized that state action can be found only when "there is no substantial reason to claim unfairness in applying constitutional standards to [the nominally private entity]." Id. at 298. At the same time, however, "[a]ction taken by private entities with the mere approval or acquiescence of the State is not state action." American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 52 (1999) (citing cases).

## D. Application

In order to determine whether SICTV is a state actor, it is first necessary to understand the nature of the entity itself and the authority under which it was created.

Pursuant to the Cable Act, 47 U.S.C. § 532(b)-(c) (1994), a cable operator is required to allocate a certain percentage of its cable system capacity to "leased access channels," which are used for commercial programming by individuals and entities not affiliated with the cable operator, and, if required by the franchising authority, to set aside a certain amount of channel capacity for "public, educational or governmental" ("PEG") access. Id. §§ 531(a), 532(b), 541(a)(4)(B); see Loce v. Time Warner Entm't Advance/Newhouse P'ship, 191 F.3d 256, 265 (2d Cir. 1999). The Cable Act contains provisions prohibiting the cable operator from exercising editorial control over the leased and PEG access channels, see 47 U.S.C. §§ 531(e), 532(c)(2) (1994), but authorizing the franchising authority to prohibit or impose conditions on material

13

deemed to be obscene, indecent or otherwise not protected by the Constitution. 47 U.S.C. §

532(h) (1994); see Loce v. Time Warner Entm't Advance/Newhouse P'ship, 191 F.3d at 265.

The Act was subsequently amended to also allow cable operators to "refuse to transmit any

leased access program. . .which contains obscenity, indecency, or nudity." 47 U.S.C. §§ 531(e),

532(c)(2) (Supp. II 1996).

Under the New York Code, a cable system, such as SI Cable, is required to provide at

least one public access channel. See N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(b)(1) (2005).

Pursuant to the Codes, Rules and Regulations of the State of New York, Title 9 (the "Code"),

the City, in its capacity as franchising authority, is required to designate an entity to operate and

administer those public access channels on cable television. See N.Y. Comp. Codes R. & Regs.

tit. 9, § 595.4(c)(1). In this instance, the Borough President incorporated and designated SICTV

as the CAO for Staten Island. (Compl. ¶¶ 14, 21-24). However, under New York law, the

municipality is specifically barred from exercising any editorial control over "any use by the

public of a public access channel."[13] N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(c)(9).

Defendants contend that the district court's holding in Glendora v. Cablevision Systems

Corp., 893 F. Supp. 264, 269 (S.D.N.Y. 1995), which was decided before Brentwood Academy,

makes it clear that SICTV was not a state actor under either the state function approach or the

symbiotic relationship approach. In Glendora, the pro se plaintiff, a producer of video programs

dealing with her various litigations, alleged that her rights were violated when Cablevision

canceled her weekly series, allegedly at the prompting of unidentified Nassau County officials.

---

[13]This Court notes that, under the law, the cable operator franchisee is also barred from
exercising any editorial control "over any public, educational or governmental use of channel
capacity designated for PEG purposes." N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(c)(8).

14

Id. at 266. The court, after examining both the functions performed by the defendant and its

relationship to the state, noted that "public access channels are not First Amendment 'public

forums,'" nor are they "private property dedicated to public use," such that the users are "'free

from any control by the owner of the cable system.'" Id. at 270 (quoting Alliance for Community

Media v. FCC, 56 F.3d 105, 120-21 (D.C. Cir. 1995)). Distinguishing the circumstances from

those in Lebron v. National Railroad Passenger Corp., 513 U.S. 374, 400 (1995),[14] the court

found that Cablevision could not be a state actor under the Lebron test because Cablevision was

not a creation of a special federal law and the federal government had no authority to appoint the

---

[14]In Lebron, the Supreme Court was confronted with the question of whether Amtrak was
a state actor for purposes of claiming violations of the First Amendment. Noting that "[i]t surely
cannot be that government, state or federal, is able to evade the most solemn obligations imposed
in the Constitution by simply resorting to the corporate form," the Supreme Court held that in
that specific instance, Amtrak was a state actor. 513 U.S. at 397. The Court held that where "the
Government creates a corporation by special law, for the furtherance of governmental objectives,
and retains for itself permanent authority to appoint a majority of the directors of that
corporation, the corporation is part of the Government for purposes of the First Amendment." Id.
at 400. Following the decision in Lebron, some courts have concluded that the Supreme Court
created a three-prong test for determining state action that required proof that: "(1) the
government created the corporate entity by special law, (2) the government created the entity to
further governmental objectives, and (3) the government retains 'permanent authority to appoint
a majority of the directors of the corporation'. . . ." Hack v. President & Fellows of Yale Coll.,
237 F.3d 81, 84 (2d Cir. 2000), cert. denied, 534 U.S. 888 (2001) (citing cases); but cf. Bal v.
Police Athletic League, Inc., No. 98 CV 9115, 2002 WL 1001052, at *2 (S.D.N.Y. May 16,
2002) (noting that the Second Circuit "has not explicitly adopted the Lebron holding as such a
test"). Other courts since Lebron have extended the Lebron analysis to entities created pursuant
to state statutes. See, e.g., Horvath v. Westport Library Ass'n, 362 F.3d at 153 (applying Lebron
test where "[l]ibrary was created by a special act of the Connecticut State legislature"); Hack v.
President & Fellows of Yale Coll., 237 F.3d at 84 (applying Lebron test where private school
was chartered by special legislation of Connecticut); Gorman-Bakos v. Cornell Coop. Extension
of Schenectady County, 252 F.3d 545, 552-53 (2d Cir. 2001) (noting that the Supreme Court in
Lebron "specifically address[ed] the status of a government-created corporation as a state actor"
and applying Lebron test where "Cooperative was created pursuant to state law to carry out
county, state and federal educational functions").

15

directors of Cablevision. Glendora v. Cablevision Systems Corp., 893 F. Supp. at 270 n.6.

Plaintiff attempts to distinguish the decision in Glendora by arguing that in that case, the entity sued was a profit making entity that was not controlled by or created by the government, whereas SICTV is a "not-for-profit organization that was created by government and is controlled by government." (Pl's. Mem. at 7). Citing Lebron, plaintiff contends that like Amtrak, SICTV was specifically created by the Borough President to further governmental objectives. (Id. at 6). Plaintiff further argues that SICTV is engaged in a public function, i.e., the administration of public access channels, and that the Borough President controls SICTV through his appointment of SICTV's board of directors. (Id. at 9-12). Since the Borough President has the power of appointment over the SICTV directors, plaintiff contends that SICTV is merely a "puppet corporation," controlled by the Borough President. Under these factors, plaintiff argues that SICTV is the equivalent of the City of New York and should be considered a state actor pursuant to the analysis in Lebron. (Id. at 6-7).

The Court agrees with plaintiff that the decision in Glendora does not resolve the issue here because unlike Cablevision, SICTV is not a totally private for-profit entity. Rather, it apparently is a non-profit organization established for the primary purpose of overseeing the public access channels operated by SI Cable. However, it appears from the allegations in the Complaint that, unlike Amtrak, SICTV was not created pursuant to either federal or state law. Instead, the Complaint alleges that pursuant to the Franchise Agreement, the Borough President created SICTV. (See Compl. ¶¶ 17, 21-25). A franchise agreement under the Cable Act is not a "special law," but is rather "an initial authorization, or renewal thereof . . . issued by a franchising authority, whether such authorization is designated as a franchise, permit, license,

16

resolution, contract, certificate, agreement, or otherwise, which authorizes the construction or operation of a cable system." 47 U.S.C. § 522(9); see also Denver Area Educ. Telecomm. Consortium, Inc. v. Federal Communications Comm'n, 518 U.S. 727, 788 (1996) (noting that a franchise is "an authorization, akin to a license, by a franchise authority permitting the construction or operation of a cable system"). Thus, this Court is not persuaded that the creation of SICTV pursuant to a franchise agreement entered into between a private not-for-profit corporation and the City satisfies the special legislation prong of Lebron.

Plaintiff argues that even though SICTV was not created pursuant to either a state or federal statute, see, e.g., Horvath v. Westport Library Ass'n, 362 F.3d at 153, there is no difference between a corporation created by statute and a corporation created "by a government official in the executive branch of city government." (Pl's. Mem. at 6). In support of his argument, plaintiff cites the decision of the District Court of Massachusetts in Demarest v. Athol/Orange Community Television, Inc., 188 F. Supp. 2d 82 (D. Mass. 2002). (Pl's. Mem. at 6-7). In Demarest, the plaintiffs, producers of a television show whose broadcasts focused on, among other things, the behavior of local governmental officials, sued a local public access cable television station, Athol Orange Television, Inc[15] ("AOTV"), complaining that they were suspended for thirty days from using the public access cable television facilities in violation of plaintiffs' First Amendment rights. Id. at 83-84. The district court, although noting that "[n]o federal decision cited by the parties, or located by this court, has positively found state action in a PEG case such as this one," id. at 89, nevertheless found that AOTV was a state actor because (1)

---

[15] The plaintiffs in Demarest also argued that defendants revised their policies and procedures manual to add certain requirements and prohibitions that violated plaintiff's rights. Demarest v. Athol/Orange Comm. Television, Inc., 188 F. Supp. 2d at 83-84.

AOTV was created by the town of Athol through a license agreement; (2) AOTV was created to further public objectives and to serve the community; and (3) the town of Athol retained authority to appoint all of the members of the group that managed and operated AOTV. Id. at 90-91 (citing Lebron v. National R.R. Passenger Corp., 513 U.S. at 400).

While Demarest is instructive, it is not controlling on this Court in this case. In Loce v. Time Warner Entertainment Advance/Newhouse Partnership, the Second Circuit made it clear that "state action may not be premised on the private entity's creation, funding, licensing or regulation by the government . . . .Nor is a private entity a state actor merely because its conduct is authorized by a state law, where its conduct is not compelled by the state." 191 F.3d at 266 (affirming the district court's determination that Time Warner Cable was not a "state actor," and citing San Francisco Arts & Athletics, Inc. v. United States Olympic Comm., 483 U.S. 522, 543-44 (1987); Rendell-Baker v. Kohn, 457 U.S. at 840-43; Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 164- 66 (1978); Jackson v. Metropolitan Edison Co., 419 U.S. at 350-51). The Second Circuit has also held that a private entity's conduct is not fairly attributable to the state "merely because the private entity is a business subject to extensive state regulation or 'affected with the public interest.'" Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 112 (2d Cir. 2003) (citing Jackson v. Metropolitan Edison Co., 419 U.S. at 350, 353).

Here, plaintiff has alleged more than simply the fact that SICTV was created pursuant to a franchise agreement. In addition to arguing that SICTV is engaged in a public function, i.e., the administration of public access channels, and that the Borough President controls SICTV through his appointment of SICTV's board of directors (Pl's. Mem. at 9-12), plaintiff further alleges that since the Borough President has the power to designate SICTV as the entity entitled to receive

18

public funds, SICTV is "vulnerable to the overt and covert coercive powers of the [Borough President]." (Id. at 12). Plaintiff argues that this constitutes "state compulsion" sufficient to confer state actor status on SICTV. (Id. 11-12 (citing Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). Furthermore, plaintiff argues that "[t]he power to designate and undesignate the CAO and the power to choose 100% of the directors . . . insinuates the [Borough President] in the affairs of SICTV so much so that any outside appearance or claim of independence is a joke," and that the SICTV directors "ignore the BP's power at their own peril." (Id. at 12).

These allegations, although not proved at this stage of the litigation, suggest a greater involvement by the Borough President in the activities of SICTV than is authorized by the regulations. See N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(c)(9) (specifically barring the municipality from exercising any editorial control over "any use by the public of a public access channel"). If proved, these allegations of government entanglement, coupled with the role played by SICTV as the oversight body for the public access channels, may ultimately be found to suffice to establish "state action." However, the Court concludes that, at this point in the litigation, when there has been no discovery and where the terms of the Franchise Agreement are not before the Court, the Court is not in a position to determine definitively whether SICTV satisfies the Lebron test[16] or whether there are other factors that establish that SICTV is in fact a

---

[16] While there are certain aspects of this case that seem to fit within the Lebron analysis, the Court lacks sufficient factual information about SICTV and its formation to conclusively determine whether SICTV is a state actor for purposes of the Lebron test. Moreover, under the Supreme Court's recent decision in Brentwood Academy, it may be that factors other than those in Lebron lead the court to conclude that there is state action here. See Brentwood Academy v. Tennessee Secondary School Athletic Ass'n, 531 U.S. at 296-97 (discussing Lebron as an example of one of the many tests that have been applied in analyzing the state action question and recognizing that the Lebron criteria were, among others, merely examples of factors suggesting the "public entwinement in the management and control of [an] ostensibly separate . .

19

state entity in accordance with <u>Brentwood Academy</u>. <u>See, e.g.</u>, <u>Horvath v. Westport Library Ass'n</u>, 362 F.3d at 153 (noting that one of the purposes of the <u>Lebron</u> test is to determine whether there exists a "'pervasive entwinement of public institutions and public officials in its composition and workings'") (quoting <u>Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n</u>, 531 U.S. at 294); <u>Lloyd v. New York Botanical Garden</u>, No. 03 CV 7557, 2004 WL 2093468, at *5 (S.D.N.Y. Sept. 17, 2004) (determining whether there is a "sufficiently close nexus with the state" to satisfy <u>Lebron</u>).

Given that this issue is before the Court on a motion to dismiss, where plaintiff has alleged not only the elements which he believes satisfy the <u>Lebron</u> test, but where he has alleged actual governmental involvement and interference in the operations of SICTV, the Court concludes that plaintiff has sufficiently alleged the elements of state action under Section 1983 to survive defendants' motion to dismiss. Thus, the Court declines to recommend dismissal of plaintiff's Complaint on the grounds that there has been no state action alleged.

### E. Constitutional Violation

Defendants contend that even if the Court finds state action in this case, plaintiff has failed to allege facts sufficient to support any of the First Amendment or Due Process violations claimed.[17] Indeed, in order to state a viable Section 1983 claim, plaintiff must allege facts

. corporation[]"); <u>see also</u> <u>Horvath v. Westport Library Ass'n</u>, 362 F.3d at 153.

[17]<u>See</u> <u>supra</u> pp. 5-6 and note 12 for a discussion of the limitation of this Court's decision to the plaintiff's First Cause of Action. Plaintiff alleges only the denial of access to production facilities, and not to the channels themselves, as the basis for his First Cause of Action. <u>See</u> (Compl. ¶¶ 46-48) (alleging the revocation of plaintiff's right to use "SICTV television

20

sufficient to support the claim that defendants' "conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." Dwares v. City of New York, 985 F.2d at 98; see 42 U.S.C. § 1983; Katz v. Klehammer, 902 F.2d 204, 206 (2d Cir. 1990); Davis v. Reilly, 324 F. Supp. 2d 361, 366 (E.D.N.Y. 2004).

The SICTV defendants contend that "[p]laintiff's [F]irst [C]ause of [A]ction does not state a violation of his First . . . Amendment rights" because he does not allege that defendants exercised content-based editorial control or even that defendants denied plaintiff access to cablecasting on the public access channels. (SICTV Mem. at 11). Rather, plaintiff's claim is that the restrictions imposed upon his use of the production facilities affect the "kind and quality of programming that plaintiff desires to produce" (Pl.'s Mem. at 17), because "certain types of programming . . . require studio production facilities for the production of high quality television programming." (Compl. ¶ 20). The SICTV defendants argue that there is no constitutional right to use the production facilities and that in the absence of allegations demonstrating denial of the right to broadcast over the public access channel, plaintiff has failed to allege a First Amendment

_____

production facilities"). In his First Cause of Action, plaintiff references the public access channels and channel capacity only by alleging that the denial of his

> "right to use the SICTV television production facilities . . . [was] in
> violation and without regard to [his] right, as secured by the First
> Amendment . . . as well as by his federal statutory rights to use
> channel capacity set aside pursuant to [the] franchise agreement . . .
> and where said deprivation limits and retards [his] ability to
> communicate . . . using the public access channel capacity."

(Compl. ¶ 48). Regardless of whether plaintiff has ever raised or has since abandoned a First Amendment claim based on the denial of channel access itself, see discussion *supra* note 12; (Compl. ¶¶ 52-57 (stating plaintiff's Second Cause of Action based on denial of channel time, but lacking any allegation of a constitutional violation)), no such claims are at issue here.

21

violation. (SICTV Reply Mem. at 4-5).[18] The City defendants also argue that plaintiff does not allege how the Franchise Agreement violates plaintiff's First Amendment rights. (City Mem. at 9). In addition, the City defendants contend that plaintiff's Complaint does not allege a cognizable property interest sufficient to state a due process violation. (Id. at 8).

Plaintiff, in response, argues that "regardless of public forum jurisprudence," public access programmers have a First Amendment right to use public access television facilities, and that plaintiff's "banishment from the facilities alone is a sufficient burden on his speech rights to implicate the First Amendment." (Pl's. Mem at 15). Plaintiff also contends that plaintiff need not allege content-based editorial control since the "First Amendment protects speech from content-neutral state action that incidentally burdens it." (Id. at 16 (citing Ward v. Rock Against Racism, 491 U.S. 781, 791-792 (1989) and United States v. O'Brien, 391 U.S. 367, 381-82 (1968))). Finally, plaintiff argues that because he has a constitutional right to use the public access facilities, he has a right to procedural due process before such access may be denied. (Id. at 18).

## F. First Amendment Claim

In order to assert a First Amendment retaliation claim under Section 1983, a plaintiff must allege that: "(1) he or she has an interest protected by the First Amendment; (2) the defendant's actions were motivated by or substantially caused by the plaintiff's exercise of that right; and (3) the defendant's action effectively chilled the exercise of the plaintiff's First

---

[18]Citations to "SICTV Reply Mem." refer to the SICTV defendants' Reply Memorandum of Law in Support of Defendants' Motion to Dismiss, dated December 17, 2004.

Amendment rights." Connell v. Signoracci, 153 F.3d 74, 79 (2d Cir. 1998) (citing Easton v. Sundram, 947 F.2d 1011, 1015 (2d Cir.1991), cert. denied, 504 U.S. 911 (1992); Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2d Cir.1995), cert. denied, 517 U.S. 1189 (1996)); see also Kerman v. City of New York, 261 F.3d 229, 241-42 (2d Cir. 2001). "The chilling effect cannot be remote or speculative." Colondres v. Scoppetta, 290 F. Supp. 2d 376, 382 (E.D.N.Y. 2003) (citing Hankard v. Town of Avon, 126 F.3d 418, 424 (2d Cir. 1997); Spear v. Town of West Hartford, 954 F.2d 63, 67 (2d Cir. 1992)). A de minimis infringement is not constitutionally significant and therefore not actionable under Section 1983. See Ford v. Reynolds, 326 F. Supp. 2d 392, 403 (E.D.N.Y. 2004); Arce v. Banks, 913 F. Supp. 307, 309 (S.D.N.Y. 1996); see also Ingraham v. Wright, 430 U.S. 651, 674 (1977).

The Complaint alleges that plaintiff is an independent television producer who produces programs for the public access channels run by SICTV. (Compl. ¶ 18). The Complaint also alleges that plaintiff has a right "to use the SICTV television production facilities to produce television programming for cablecast on the public access television channels in Staten Island." (Id. ¶ 48). Plaintiff alleges that he relied on the use of SICTV's production facilities in order to produce his programs "at low cost" and that he is "unable to produce certain types of programming that require studio production facilities for the production of high quality television programming." (Id. ¶ 20). He further claims that "the board of directors of SICTV enacted policies and procedures for the administration of SICTV" and "for the suspension and revocation of the rights of residents of Staten Island to use SICTV channels and facilities." (Id. ¶ 32). Plaintiff alleges that his right to use SICTV's television production facilities was permanently revoked. (Id. ¶ 34).

23

However, plaintiff has not alleged that defendants' revocation of plaintiff's right to use SICTV's television production facilities was content-based. In fact, plaintiff argues only that he was banned from using the SICTV production facilities "[f]or reasons unknown." (Pl's. Mem. at 2). Furthermore, plaintiff has not alleged that SICTV has prevented him from submitting videotapes or that SICTV has refused to broadcast plaintiff's videotapes. Instead, in his First Cause of Action, plaintiff alleges only that he has been denied access to SICTV's production facilities, and that "said deprivation limits and retards [his] ability to communicate the messages he desires. . . ." (Id. ¶ 48). In fact, plaintiff argues that "it reasonably may be inferred that plaintiff is referring to kind and quality issues." (Pl's. Mem. at 17).

As an initial matter, plaintiff's claim that he has been deprived of the ability "to produce certain kinds of programming at low cost" because he cannot use SICTV's production facilities (Compl. ¶ 20), does not state a claim under the First Amendment. The Second Circuit has held that "the First Amendment does not guarantee a right to the least expensive means of expression." Gannett Satellite Info. Network, Inc. v. Metropolitan Transp. Auth., 745 F.2d 767, 774 (2d Cir. 1984) (citing Heffron v. Int'l Soc'y for Krishna Consciousness, Inc., 452 U.S. 640, 654-55 (1981); Kovacs v. Cooper, 336 U.S. 77, 88-89 (1949) (plurality opinion)); see also In re G. & A. Books, Inc. v. Stern, 770 F.2d 288, 299 (2d Cir. 1985).

Moreover, plaintiff neither argues in his Memorandum nor alleges facts in his Complaint to suggest that SICTV's production facilities are a public forum, such that even content-neutral restrictions would be subject to First Amendment analysis.

In analyzing First Amendment claims of unjustified speech restrictions on government owned property, the courts generally employ a "forum-based approach," to determine the

appropriate level of judicial scrutiny to be applied. Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity v. City of N.Y. Dep't of Parks & Recreation ("Hotel Employees"), 311 F.3d 534, 544, 546-47 (2d Cir. 2002); see also Int'l Soc. for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 678 (1992); Perez v. Hoblock, 368 F.3d 166, 172 (2d Cir. 2004). The level of judicial scrutiny varies depending upon the nature of the forum subject to regulation. Make the Road By Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004). The forum-based approach recognizes three general categories of fora based on the physical characteristics of the space, the nature of its use, and the government's intent in constructing the space. Hotel Employees, 311 F.3d at 546-47. The three categories consist of: (1) the "traditional" public forum; (2) the "designated" public forum; and (3) the nonpublic forum. Id. at 544-45.

The first category, the "traditional" public forum, includes places like streets and parks, which have "'immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." Perry Educ. Ass'n v. Perry Local Educator's Ass'n, 460 U.S. 37 (1983) (quoting Hague v. CIO, 307 U.S. 496, 515 (1939)). Whether a place is a traditional public forum is determined primarily by "the objective characteristics of the property, such as whether, 'by long tradition or by government fiat,' the property has been 'devoted to assembly and debate.'" Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. 666, 667 (1998) (quoting Perry Educ. Assn. v. Perry Local Educators' Assn., 460 U.S. at 45). "Speech finds its greatest protection in traditional public fora." Make the Road By Walking, Inc. v. Turner, 378 F.3d at 142. Content-based regulations of speech in the traditional public forum are subject to strict

25

scrutiny and will be upheld only if "necessary to serve a compelling state interest and . . . [if they are] narrowly drawn to achieve that end." Perry Educ. Assn. v. Perry Local Educators' Assn., 460 U.S. at 45.

The second category, the "designated" public forum, is a "nontraditional public forum," which has been intentionally opened by the government for "expressive activity." Make the Road by Walking v. Turner, 378 F.3d at 143 (citations omitted). "To create a forum of this type, the government must intend to make the property 'generally available,' to a class of speakers." Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. at 678 (quoting Widmar v. Vincent, 454 U.S. 263, 264 (1981)). Although the government may decide to close a designated public forum, Perry Educ. Assn. v. Perry Local Educators' Assn., 460 U.S. at 46, while the forum remains open to the public, government restrictions on speech are subject to strict scrutiny in the same manner as the traditional public forum. Id.

A subset of the designated public forum is the "limited" public forum. Make the Road by Walking v. Turner, 378 F.3d at 143. A limited public forum is created "'where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects.'" Hotel Employees, 311 F.3d at 545 (quoting N.Y. Magazine v. Metro. Transp. Auth., 136 F.3d 123, 128 n.2 (2d Cir.), cert. denied, 525 U.S. 824 (1998)). In a limited public forum, the "government is free to impose a blanket exclusion on certain types of speech, but once it allows expressive activities of a certain genre, it may not selectively deny access for other activities of that genre." Travis v. Owego-Apalachin Sch. Dist., 927 F.2d 688, 692 (2d Cir. 1991); see also Hotel Employees, 311 F.3d at 545-46. The courts have held that the government may impose restrictions on speech that is not within the genre of expression for

which the limited public forum was created, so long as the restrictions are "reasonable and viewpoint neutral." Make the Road by Walking v. Turner, 378 F.3d at 143 (citing Fighting Finest, Inc. v. Bratton, 95 F.3d 224, 227 (2d Cir. 1996) (corrected opinion)); Hotel Employees, 311 F.3d at 546. When the regulations apply to speech within the genre, strict scrutiny is applied. Hotel Employees, 311 F.3d at 546; Fighting Finest, Inc. v. Bratton, 95 F.3d at 229; Travis v. Owego-Apalachin Sch. Dist., 927 F.2d at 692.

Finally, the third category, the nonpublic forum, is any "public property not traditionally open to public expression or intentionally designated by the government as a place for such expression." Make the Road by Walking v. Turner, 378 F.3d at 143 (citing General Media Communications v. Cohen, 131 F.3d 273, 275 (2d Cir. 1997) (corrected opinion)). In determining whether property is a limited public forum or a nonpublic forum, courts look to "the nature of the property, and its compatibility with expressive activity." General Media Communications v. Cohen, 131 F.3d at 278. However, the Second Circuit has made it clear that "governmental intent is the 'key question' in forum analysis." Make the Road by Walking v. Turner, 378 F.3d at 144 n.5 (noting that what makes a designated public forum different from a nonpublic forum is the government's intent, which courts have found to be ascertainable from the "policy and practice of the government") (quoting Cornelius v. NAACP Legal Def. & Educ. Fund, 473 U.S. 788, 802 (1985)).

If the government permits some speakers to use a forum, that "does not necessarily convert a nonpublic forum into a limited public forum." Id. at 144; see also Arkansas Educ. Television Comm'n v. Forbes, 523 U.S. at 679 (noting that a public forum "is not created when the government allows selective access for individual speakers rather than general access for a

27

class of speakers"). Where there is general access to the public, that suggests that the property is a designated public forum; where access is "selective" in that the government "does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then, as individuals, 'obtain permission' to use it," then the property is a nonpublic forum. Make the Road by Walking v. Turner, 378 F.3d at 144. In order to determine whether the government's access policy is selective or general, the court must examine the government's written policies governing access, as well as the "actual policy - as gleaned from the consistent practice with regard to various speakers." Id. (quoting Lebron v. National R.R. Passenger Corp., 69 F.3d 650, 656 (2d Cir. 1995), remanded by 513 U.S. 374, cert. denied, 517 U.S. 1188 (1996). Among the factors considered are the "conditions of access (e.g., whether permission is required)." Fighting Finest, Inc. v. Bratton, 95 F.3d at 230.

The facts as alleged in plaintiff's Complaint make it clear that the SICTV broadcast studios are not traditional public fora. Indeed, in his Complaint, plaintiff alleges that the production facilities are the property of SI Cable, a private corporation. (Compl. ¶ 31). However, the allegations in the Complaint do not suffice to establish whether the studio facilities are a limited public forum or a nonpublic forum for purposes of a First Amendment analysis. There are no facts alleged as to whether SICTV allows general access to the public or whether its policies and practices demonstrate that access is "selective" and limited to individual speakers who must first obtain permission to use the facilities. See Make the Road by Walking v. Turner, 378 F.3d at 144 (noting that "the government does not create a designated public forum when it does no more than reserve eligibility for access to the forum to a particular class of speakers, whose members must then as individuals, 'obtain permission' to use it").

28

Nor is there any evidence in the relevant state statutes or regulations which suggest a government intent to open production facilities to the public. On the contrary, while Section 594.4 of the Code requires cable franchisees to make available public access channel capacity, N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(b)(1)-(2), the only PEG access facility services required are "the ability to play back prerecorded programming and to transmit programming information." N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(c)(7). The statute makes no mention of production studios, and does not require cable franchisees to provide the public with equipment to record their programming. See id. In the absence of any allegations in the Complaint that the government intended to create a designated public forum in the production facilities, plaintiff has failed to state a violation of his First Amendment rights.

Within a nonpublic forum, restrictions on speech must be "reasonable and viewpoint neutral." Make the Road by Walking v. Turner, 378 F.3d at 143. Here again, plaintiff has failed to allege facts necessary to state a violation of any First Amendment right. Plaintiff has not alleged that the restrictions imposed upon him that led to his denial of access to the production facilities were unreasonable, nor has he alleged that he was discriminated against based on his viewpoint or even on the content of his broadcasts. In his Complaint, plaintiff makes only the conclusory statement that his "right to use the SICTV television production facilities on a first-come, first-served,[19] nondiscriminatory basis" was permanently revoked in violation of his First Amendment rights. (Compl. ¶¶ 46, 48). Plaintiff makes no claim that the "alleged factual basis

---

[19]Plaintiff has cited no authority for his claim that he has a right to use the production facilities on a "first-come, first-served" basis. Under the Code, only the allocation of "channel time" is required to be scheduled on a "first-come, first-served, nondiscriminatory basis." N.Y. Comp. Codes R. & Regs. tit. 9, § 595.4(c)(4).

for the revocation of his right to use the . . . facilities" (id. ¶ 46), was unreasonable or based on the viewpoint of his programming. Instead, plaintiff states only that the revocation was made "[f]or reasons unknown." (Pl's. Mem. at 2; see also *supra* note 8). Plaintiff has, therefore, failed to allege facts that would state a violation of his First Amendment rights in a nonpublic forum.

It is clear that access to SICTV's production facilities is different from the general access to broadcasting intended for the public access channels themselves. See, e.g., Jersawitz v. People TV, 71 F. Supp. 2d 1330, 1341-42 (N.D. Ga. 1999) (finding that the television production facilities used to film programs are nonpublic fora for purposes of the First Amendment because defendant "limit[ed] access to the production facilities and equipment to producers who met certain qualification requirements and who agreed to comply with the rules and regulations established by [defendant]"). While plaintiff correctly argues that the Second Circuit has recognized a Section 1983 remedy for the improper restriction of a citizen from broadcasting on a public access channel (Pl's. Mem. at 15 (citing Mc[Cl]ellan v. Cablevision of Conn., Inc., 149 F.3d 161, 168 (2d Cir. 1998)), plaintiff's First Cause of Action and Memorandum address only the denial of access to the production facilities, not to the channels themselves. See *supra* note 17.

Given that plaintiff has alleged insufficient facts to show that SICTV's production facilities are a traditional or designated public forum, and has failed to allege more than mere conclusory statements that the denial was unreasonable and a violation of his right of access to a nonpublic forum, this Court finds that in his First Cause of Action, plaintiff has failed to state a First Amendment claim under Section 1983.

## G. Due Process

Plaintiff also claims that the practice and procedures of the defendants in revoking plaintiff's rights to use SICTV's production facilities violated plaintiff's right to procedural due process under the Fourteenth Amendment. Plaintiff alleges that he was not afforded "a hearing or any meaningful opportunity to be heard." (Compl. ¶ 46). The City defendants argue that plaintiff does not have a "cognizable property interest in use of someone else's television production facilities," and therefore is not entitled to a hearing or due process. (City Mem. at 8).

Courts have analyzed Section 1983 claims of violations of procedural due process under the Fourteenth Amendment using a two-step inquiry: "(1) whether [plaintiff] possessed a liberty or property interest and, if so, (2) what process he was due before he could be deprived of that interest." Ciambriello v. County of Nassau, 292 F.3d 307, 313 (2d Cir. 2002) (citing Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995)). "The Fourteenth Amendment due process guarantee . . . only extends to property claims to which an individual has a 'legitimate claim of entitlement,'" which is determined under federal constitutional law. New York State Nat'l Org. for Women v. Pataki, 261 F.3d 156, 164 (2d Cir. 2001) (citing Board of Regents v. Roth, 408 U.S. 564, 577 (1972)). However, state law determines the substantive property interest. See Ezekwo v. New York City Health & Hosps. Corp., 940 F.2d 775, 783 (2d Cir. 1991). In addition, "if state law makes the pertinent official action discretionary, one's interest in a favorable decision does not rise to the level of a property right entitled to procedural due process protection." RR Village Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1201 (2d Cir. 1987).

In the instant case, plaintiff has alleged no substantive right to the use of SICTV's production facilities. Plaintiff admits in the Complaint that the production facilities are the

31

property of SI Cable. (Compl. ¶ 31). Furthermore, this Court has already determined that plaintiff has not alleged sufficient facts to show that the SICTV production facilities are a public forum. In fact, the Franchise Agreement gives the SICTV's board of directors the responsibility for the administration of the public access channels including the production facilities. (Compl. ¶ 17). Finally, as discussed above, *supra* pp. 28-29, plaintiff has no statutory right to use SICTV's production facilities. Section 595.4 of the Code does not provide for production studios or recording equipment to be made available to the public, and plaintiff has no statutorily created property right therein.

In the absence of facts sufficient to state a claim of either a First Amendment violation or a Fourteenth Amendment due process violation under Section 1983, this Court respectfully recommends that plaintiff's First Cause of Action be dismissed. Furthermore, since only the First Cause of Action implicates federal questions, this Court recommends that supplemental jurisdiction be denied for all related state law claims.[20]

## H. Individual Responsibility

Should the court determine that plaintiff has stated a valid claim under Section 1983, the City defendants seek to dismiss the claims against the individually named City defendants, Mayor Bloomberg and Borough President Molinaro, on the grounds that there are no factual allegations in the Complaint that detail any action taken by either of the City defendants to deprive plaintiff of his rights.

---

[20]Plaintiff concedes in his Memorandum that this Court only has jurisdiction based upon plaintiff's First Cause of Action. (Pl.'s Mem. at 4 n.2). See generally *supra* note 12.

Under Section 1983, there must be evidence of personal involvement by each defendant in order to hold him or her accountable for an alleged constitutional violation. See Johnson v. Newburgh Enlarged Sch. Dist., 239 F.3d 246, 254 (2d Cir. 2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986); McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert. denied, 434 U.S. 1087 (1978). A plaintiff can demonstrate the personal involvement of a supervisory official where there is evidence that "the official has either participated directly in the alleged violation, failed to remedy a wrong after having learned about the violation through a report or appeal, created or let continue a policy or custom under which violations occurred, or been grossly negligent in managing subordinates who caused the violation." Hopper v. Coughlin, No. 90 CV 2333, 1991 WL 44842, at *2 (S.D.N.Y. Mar. 28, 1991) (citing Bellamy v. McMickens, 692 F. Supp. 205, 211 (S.D.N.Y. 1988); Williams v. Smith, 781 F.2d at 323-24); see also Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997).

To the extent that plaintiff has named Mayor Bloomberg and Borough President Molinaro in their official capacities, plaintiff's Complaint fails to allege any facts that suggest that either defendant was personally involved in the alleged decision to bar plaintiff's access to the facilities or that they were responsible for or played any role in the decisions which led to the alleged violations of plaintiff's rights. With respect to Mayor Bloomberg, the Complaint is devoid of any allegation that the Mayor took any action in connection with the decision to bar plaintiff from the SICTV facilities or that the Mayor was even aware of the issue. Indeed, apart from being described as the Mayor of the City, there are no specific allegations in the Complaint naming Mayor Bloomberg at all.

With respect to Staten Island Borough President Molinaro, the Complaint contains allegations that Mr. Molinaro took certain actions to establish SICTV and to designate it as the CAO for Staten Island. It is further alleged that he appointed the various directors who serve on the SICTV Board. (Compl. ¶¶ 6, 22-28). The Complaint also alleges that Mr. Molinaro was present at a particular board of directors meeting on July 7, 2003. (Id. ¶¶ 39-42). However, there is again nothing in the Complaint before this Court that alleges that Mr. Molinaro played any personal role in the day-to-day operations of SICTV or that he was even involved in the promulgation of the policies and procedures of SICTV. Indeed, the Complaint explicitly states that the Board of Directors of SICTV was responsible for enacting the SICTV procedures. (Id. ¶ 32). There is no allegation that Mr. Molinaro, either directly or indirectly, played a role in the decision to bar plaintiff from the facilities or that he was even aware of the decision or aware of any violations of plaintiff's rights. Finally, there is no allegation that either the Borough President or the Mayor was grossly negligent in the management or supervision of others who caused the violation.

In the absence of any specific factual allegations claiming that defendants Bloomberg or Molinaro were personally involved in any actions in violation of plaintiff's rights, either through direct participation or awareness of the violation or that they were grossly negligent in managing people who were responsible, the Complaint fails to state a valid claim against them individually.

Although plaintiff argues that a Section 1983 claim is subject only to the notice pleading requirements of Rule of the Federal Rules of Evidence (Pl's. Mem. at 4 (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. at 164), there still must be facts alleged sufficient to put the defendants on notice of what the plaintiff claims they have done

sufficient to allow them an opportunity to defend. See Swierkiewicz v. Sorema, NA, 534 U.S. 506, 512 (2002). Certainly, in order to survive a motion to dismiss, a civil rights complaint must contain "more than mere conclusory allegations." Salahuddin v. Cuomo, 861 F.2d 40, 43 (2d Cir. 1988). A complaint under Section 1983 must contain "more than naked improbable unsubstantiated assertions without any specifics;" it must, in fact, contain "specific factual allegations as to the illegal conduct and resultant harm." Neustein v. Orbach, 732 F. Supp. 333, 346 (E.D.N.Y. 1990).

In the absence of any allegation as to the actions taken by these two individual defendants,[21] it is respectfully recommended that plaintiff's claims against Mayor Bloomberg and Borough President Molinaro be dismissed.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b); Small v. Secretary of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

---

[21]Indeed, in his papers in response to defendants' motion, plaintiff does not address this specific argument raised by the individual City defendants.

35

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
September 27, 2005

Cheryl L. Pollak
United States Magistrate Judge